```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

SANDRA LUZ TORRES,
o/b/o M.L.H.,

         Plaintiff,

  v.              **DECISION AND ORDER**
                    17-CV-82
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.

## INTRODUCTION

    Plaintiff, on behalf of her child, M.L.H., challenges an Administrative Law Judge's ("ALJ") determination that M.L.H. is not entitled to benefits under the Social Security Act ("the Act"). Plaintiff alleges that M.L.H. has been disabled since February 2, 2009, when M.L.H. was eight years old, due to optic neuritis and Attention-Deficit Hyperactivity Disorder (ADHD). Tr.[1] at 52, 134, 142. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Grenville W. Harrop, Jr. is not supported by substantial evidence in the record and is based on erroneous legal standards.

    Presently before this Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 12, 21). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence and consistent with applicable legal

---

[1] "Tr." refers to the Social Security Transcript which appears at Docket No. 11.

standards.  Thus, the Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is granted and Plaintiff's motion (Dkt. No. 12) is denied.

**PROCEDURAL HISTORY**

On June 28, 2010, Plaintiff filed an application for Supplemental Security Income (SSI) benefits for M.L.H., which the Commissioner of Social Security denied on November 9, 2010.  Tr. at 53.  Upon Plaintiff's written request for a hearing, ALJ Harrop held an administrative hearing on August 9, 2012, at which M.L.H. and Plaintiff, represented by counsel, testified. Tr. at 31-51. On August 23, 2012, the ALJ issued a decision finding that M.L.H. was not disabled.  Tr. at 13-26.  After the Appeals Counsel denied Plaintiff's request for review, Plaintiff appealed the ALJ's decision to the United States District Court for the Western District of New York, at which point the parties stipulated to remand the case for further administrative proceedings.  Tr. at 586-90.  The ALJ held a second hearing on July 23, 2015, at which Plaintiff, M.L.H. and their counsel appeared.  Tr. at 529-54.  On January 26, 2016, the ALJ issued a second decision finding that M.L.H. was not disabled through the date of the decision.  Tr. at 485-508.

After exhausting her administrative remedies, Plaintiff filed the current action challenging the Commissioner's final decision on January 27, 2017.  Dkt. No. 1.  On October 30, 2017, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. No. 12.  Defendant moved for the same relief on March 8, 2018.  Dkt. No. 21.

# DISCUSSION

**Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the district court must only decide whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**Standard for Disabled Child's SSI Benefits**

An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §§ 416.924 (a)-(d).

First, the ALJ determines whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if the child is not engaged in any substantial gainful activity, the ALJ determines whether the child has a medically severe impairment or combination of impairments that cause "more than a minimal functional limitation." 20 C.F.R. § 416.924(c). Third, the ALJ determines whether the child's severe impairment(s) meets, medically equals, or functionally equals the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). *Conlin*, 111 F. Supp. 3d at 384-85.

Where an impairment medically meets or equals a listed impairment, the child will be found disabled. 20 C.F.R. § 416.924(d)(1). If a child's impairment or combination of impairments does not meet or equal a listed impairment, the ALJ must assess all functional limitations caused by the child's impairments in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926(a),(b)(1). A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(d). "A 'marked' limitation

exists when the impairment 'interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Hart v. Colvin,* No. 12-CV-1043-JTC, 2014 WL 916747, at *3 (W.D.N.Y. Mar. 10, 2014) (citing 20 C.F.R. § 416.926a(e)(2)(i)). "An 'extreme' limitation is an impairment which 'interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities.'" *Id.* (citing 20 C.F.R. § 416.926a(e)(3)(i)).

## ANALYSIS

Applying the three-step evaluation in the instant case, the ALJ determined that: (1) M.L.H. had not engaged in substantial gainful activity since June 28, 2010, the application date (Tr. at 488); (2) M.L.H.'s speech and language delay, optic neuritis, and ADHD were severe impairments (Tr. at 488); and (3) M.L.H. did not have an impairment or combination of impairments that met or medically equaled an impairment contained in the Listing of Impairments. (Tr. at 489-90). Assessing the impact of M.L.H.'s impairments in the six relevant domains, the ALJ concluded that her deficits did not functionally equal a listed impairment. Tr. at 490-507. The ALJ started with the premise that M.L.H. was a school-aged child when her mother filed the application for benefits and was an adolescent at the time of the decision. Tr. at 488. He determined that M.L.H. had a less than "marked" limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, health and wellbeing, and no limitation in her ability to care for herself. Tr. at 496-507. Thus, the ALJ concluded that M.L.H. was not disabled and not entitled to benefits. Tr. at 508.

5

Plaintiff argues that the ALJ did not properly evaluate the medical and "other source" opinions. Dkt. No. 12-1, pp. 15-24. Plaintiff assigns three specific errors to the ALJ's opinion analysis. First, that while purporting to give "significant weight" to questionnaires filled out by M.L.H.'s teachers, which reported that M.L.H. had "serious" and "obvious" limitations in the areas of acquiring and using information and attending to and completing tasks, the ALJ found that she had less than marked limitations in those two domains. Dkt. No. 12-1, pp. 16-19. Second, the ALJ gave undue weight to the reviewing medical consultant's opinion. Dkt. No. 12-1, pp. 19-24. And third, the ALJ failed to weigh the opinions of M.L.H.'s examining psychologists. Dkt. No. 12-1, pp. 24-25.

**Teacher Questionnaires**

As an initial matter, this Court notes that teachers are not considered acceptable medical sources in 20 C.F.R. § 416.913(a), and therefore, their opinions are not entitled to controlling weight. *Piatt v. Colvin,* No. 13–CV–6436 EAW, 80 F.Supp.3d 480, 493, 2015 WL 274180, at *12 (W.D.N.Y. Jan. 22, 2015); *Conlin*, 11 F.Supp.3d at 386-87 (stating that "[i]t is well established that teacher questionnaires are considered valid 'other source' opinions"). The amount of weight to give "other source" opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole. 20 C.F.R. § 416.927(c). Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, [though] those decisions should be explained." *Oaks v. Colvin,* No. 13-CV-917-JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue,* No.

2:11–CV–138, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012)); *Conlin*, 111 F. Supp. 3d at 386.

The ALJ explicitly gave "significant weight" to a questionnaire filled out by M.L.H.'s literary specialist, Susan Mathos, and her math teacher, Jennifer Goldin, in August 2012 (Tr. at 209-220), and one completed by her consultant teacher, Lindsey Lee in June 2015 (Tr. at 687-94), reasoning that the teachers "had the opportunity to observe claimant on a daily basis" and "[a]s teachers, they are familiar with the progress and behavior that can reasonably be expected from a child of the claimant's age and ability." Tr. at 496. As the ALJ noted, M.L.H's teachers opined in 2012 and 2015 that she had "very serious problems" in the area of comprehending and doing math problems (which is relevant to the domain of acquiring and using information) and "serious problems" with paying attention when spoken to directly and with completing work consistently without careless mistakes (implicating the domain of attending and completing tasks). Tr. 497-500. In Plaintiff's view, the questionnaires, if given significant weight, compel a finding that Plaintiff has "marked" limitations in the domains of acquiring and using information and attending and completing tasks. This Court does not agree. M.L.H.'s corresponding school records support the conclusion that she had a less than marked deficits in these two domains, and other evidence in the record suggests that M.L.H.'s poor school performance was due to excessive absenteeism and her refusal to take medication to control her ADHD.

The domain of acquiring and using information concerns itself with how well a claimant acquires or learns information, and how well he or she uses the information that they have learned. 20 C.F.R. § 416.926a. In determining a child's ability in the domain of attending and completing tasks, an ALJ considers how well a child is able to focus and maintain his or her attention, and how well she begins, carries through, and finishes her activities. 20 C.F.R. § 416.926a. Although the 2012 and 2015 questionnaires indicated deficits in these areas, M.L.H.'s school records show that she was placed in a general education classroom[2] rather than a self-contained one (Tr. at 680); that her attention to classroom tasks had improved over the 2014-15 school year (Tr. at 677); that she benefitted from having tests read to her (Tr. at 677); that reading was an area of significant growth (Tr. at 677); that she had become a "more confident writer" (Tr. at 677); that she "respond[ed] well to checks for understanding and redirection" (Tr. at 678); and that she made such steady progress towards her speech goals that she "no longer need[ed] speech therapy to be successful in the classroom setting." Tr. at 743.

M.L.H.s' educational records show that there were reasons unrelated to her alleged disabilities that caused her to underperform in school; specifically, that M.L.H. was unmotivated to work within her abilities, missed school frequently, and refused to take Ritalin even though the medication helped to sustain her attention. These reasons were documented in the teacher questionnaires, which the ALJ gave "substantial weight," as well as M.L.H.'s corresponding school records. For example, Ms. Lee stated in the

---

[2] According to M.L.H., she was in a "class of 25 students" during the 2014-15 year. Tr. at 539.

2015 questionnaire: "M.L.H. is resistant to completing school work independently, she rarely completes homework. [She] is encouraged to read independently at her reading level, but rarely does."  Tr. at 688.  M.L.H.'s 2015 Individualized Education Plan stated: "[M.L.H.] rarely completes required assignments at home and relies heavily on resource room and required after school support to complete assignments.  [She] is often recommended to come for support both before and after school, unfortunately, she does not always accept those invitations. [She] is inconsistent with attending to required classroom tasks, but has demonstrated improvement over the last year, however she does tend to be focused on personal tasks during classes, such as drawing or writing notes."  Tr. at 677.  Of more significance, Ms. Lee noted that M.L.H. "missed 35 days of school and had 73 days tardy during the 2014-15 school year."  Tr. at 687, 695.[3]

At the hearing, M.L.H. and her mother testified that she put little effort into her school work and refused to take Ritalin to control her ADHD.  "I struggle with homework because I don't like doing it," M.L.H. testified.  Tr. at 50.  When asked at the 2012 hearing if Ritalin helped her with her ADHD, M.L.H. answered "a lot."  Tr. at 49-50.  Yet, by the 2015 hearing, M.L.H. had stopped taking Ritalin stating that "[she] didn't want to take it anymore" because it gave her headaches.[4]  Tr. at 542.  Her mother testified that M.L.H.'s doctor did not take her off Ritalin; rather, M.L.H. unilaterally "rejected" taking

---

[3] When asked at the 2015 hearing why she missed school, M.L.H. replied simply "I wasn't feeling well." Tr. at 535-36.  Plaintiff testified that the doctor advised her that "it could be something wrong with [M.L.H.'s] immune system."  Tr. at 545.  She testified that her M.L.H. was often late for the 8 a.m. school start because: "She's very slow. She does take her time."  Tr. at 546-47.

[4] M.L.H. testified in 2012 that when she took Ritalin during the school year she did not have "any problems."  Tr. at 50.  She did not testify at that time that Ritalin gave her headaches or any other side effects.

Ritalin in 2013, even though it helped her focus, because she "did not want to take it anymore." Tr. at 547-48. As a result, M.L.H.'s grades suffered. Tr. at 547-48.

Given these facts, this Court finds that the ALJ did not err in giving "substantial weight" to the teacher questionnaires but also finding that M.L.H. had less than marked limitations in the domains of acquiring and using information and attending and completing tasks. The questionnaires and the corresponding records show that M.L.H. was not working up to her potential in these domains for reasons unrelated to her disabilities. The ALJ was entitled to consider M.L.H.'s refusal to take Ritalin which her doctor had prescribed for her ADHD. *See Wynn v. Comm'r of Soc. Sec.*, No. 1:17-CV-01316 EAW, 2018 WL 5629773, at *8 (W.D.N.Y. Oct. 30, 2018); *Pulos v. Comm'r of Soc. Sec.*, No. 1:18-CV-00248 EAW, 2018 WL 5801551, at *4 (W.D.N.Y. Nov. 5, 2018) (holding that the ALJ, in proceeding to obtain Social Security disability insurance benefits, was entitled to consider claimant's non-compliance with her doctor's suggested treatment for her diabetes).[5] This is especially true where by all accounts, the prescribed medication (Ritalin) consistently helped M.L.H. prior to her unilateral decision to stop taking it. *Compare Keene ex rel. J.T. v. Astrue*, 901 F. Supp. 2d 339, 353-54 (N.D.N.Y. 2012).

---

[5] Plaintiff argues that M.L.H.'s refusal to take her Ritalin was evidence that she was limited in the domain of caring for oneself. Dkt. No. 12-1. Although M.L.H. had on occasion made statements like "I wish I was never born," and cut herself in 2013 prompting her mother to put her into counseling (Tr. at 552-53, 727), none of the treating or consulting sources or teachers opined that M.L.H. could not take care of herself.

**Consultant Examiner's Opinion**

Plaintiff argues that "[a] thorough reading of the ALJ's decision makes clear that the only opinion to which he attributed great weight in determining M.L.H.'s limitations was that of the reviewing state medical consultant, Dr. J. Meyer." Dkt. No. 12-1. This Court does not agree. Dr. Meyer reviewed the record evidence in November 2010 and opined, among other things, that the claimant had no limitation in attending and completing tasks. Tr. at 319. While the ALJ gave Dr. Meyer's opinion "some weight," he clearly rejected the doctor's opinion regarding M.L.H.'s limitations in this particular domain, stating unequivocally that M.L.H. "has a diagnosis of ADHD" which impacted her attention and concentration. Tr. at 495. The ALJ noted, as was appropriate, that M.L.H.'s doctors and teachers "have noted improvement in [M.L.H.'s ADHD] symptoms when she is on Ritalin." Tr. at 495.

An ALJ's conclusions about a claimant's deficits need not perfectly correspond with any of the opinions of the medical sources cited in his or her decision; rather, he or she may weigh all of the evidence and make a finding that is consistent with the record as a whole. *Barry v. Colvin*, 606 F. A'ppx 621, 623-24 (2d Cir. 2015). That is exactly what the ALJ did here. The ALJ's conclusions were supported by the teacher questionnaires discussed above, Plaintiff's and M.L.H.'s testimony, and the following facts documented by Amy Atwater, M.S., CCC-SLP, M.L.H.'s speech language evaluator, and Dr. Susan Santarpia, her consultative child psychiatrist: M.L.H. was in regular education classes and had never repeated any classes (Tr. 309, 313, 493); although M.L.H. previously participated in therapy for ADHD, by November 2010, she no longer received

therapy (Tr. at 309-10, 442, 493); during her evaluation, M.L.H. was cooperative and friendly and displayed good effort and appropriate attention and concentration (Tr. at 314, 493-94); M.L.H.'s speech was 100% intelligible by both familiar and unfamiliar listeners and she was able to follow simple verbal directions (Tr. at 314, 494); despite a severe speech and language delay, M.L.H. made steady progress in her speech goals as evidenced by the fact that her school discontinued her speech therapy in March 2015, stating that she no longer needed it to be successful (Tr. at 495, 743-44).

For these reasons, this Court finds no error in the ALJ's analysis of the teacher questionnaires.

**Opinions of Dr. Jackson and Dr. Benedict**

Plaintiff contends that the ALJ "failed to weigh" the opinions of neuropsychologists Lisa Jackson, PhD, and Ralph Benedict, PhD. Dkt. 12-1, p. 24. Plaintiff also argues generally, that the ALJ failed to adequately explain why he found less than marked limitations or no limitations in all domains. Dkt. No. 12-1, pp. 25-28. Dr. Jackson and Dr. Benedict each conducted a battery of psychological tests on M.L.H., Dr. Jackson in 2009 and Dr. Benedict in 2015. Based on their respective tests, Dr. Jackson diagnosed M.L.H. with ADHD and other deficits, and Dr. Benedict diagnosed her with low average intelligence with symptoms of depression. Tr. at 225-30; 442-45. However, neither Dr. Jackson nor Dr. Benedict opined as to how these diagnoses affected M.L.H.'s functional capabilities. Tr. at 225-30, 442-45, 494-95.

12

While "[a] claimant is entitled to an express recognition of a favorable medical source statement and an ALJ's reasons for not accepting it," *Feliciano v. Colvin*, No. 12-CV-1251S, 2014 WL 2945776, at *3 (W.D.N.Y. June 30, 2014), an ALJ is not required to discuss every piece of evidence where, as here, the rationale for his decision can be deduced from the record. *Colvin*, 111 F. Supp. 3d at 388. The ALJ included a lengthy summary of Dr. Benedict's battery of tests and concluded that M.L.H. had ADHD and other delays. This was entirely consistent with the results reached by Drs. Jackson and Benedict. Tr. at 229, 488, 494-95. Under the circumstances, it was not erroneous for the ALJ to not assign a particular weight to the reports generated by Drs. Benedict and Jackson.

**Substantial Evidence**

After carefully examining the administrative record, this Court finds that substantial evidence supports ALJ Harrop's decision, including the objective medical evidence and opinions discussed herein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the evidence in rendering his decision that M.L.H. is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is based on substantial evidence.

Accordingly, IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Cross-Motion for Judgment on the Pleadings (Docket No. 21) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

DATED: Buffalo, New York
December 21, 2018

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**